F. F. Vandevort & Company, Limited, to use of F. F.
Vandevort, *v.* Wheeling Steel & Iron Company, Appellant.

*Evidence—Fraud—Province of court and jury.*

When facts are to be found from testimony or inferred from other proved
facts or circumstances in the cause, or when general inferences of fact are
to be drawn from all the evidence relating to a given question or subject,
it is the duty of the jury and not of the court to make such findings and
draw such inferences and conclusions of fact.

In an action to recover commissions on sales, where defendant alleges
bad faith on the part of the plaintiff, but the facts upon which the alleged
fraud is based are neither admitted, nor clearly established by undisputed
evidence, the court cannot withdraw the case from the jury, although
the evidence for the defendant strongly tends to prove the alleged bad
faith of the plaintiff.

Argued Oct. 27, 1899. Appeal, No. 39, Oct. T., 1899, by
defendant, from judgment of C. P. No. 2, Allegheny Co., July T.,
1896, No. 700, on verdict for plaintiff. Before STERRETT, C. J.,
GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ.
Affirmed.

Assumpsit to recover commissions on sales. Before SHA-
FER, J.

At the trial, these facts were shown: The plaintiff, a limited
partnership association, sold on commissions to E. W. Clark a
large quantity of steel for the Wheeling Steel Works. Edmund
D. Smith and W. G. Mendenhall, who did business in Phila-
delphia under the name of Edmund D. Smith & Company,
were on the board of managers of the plaintiff association, and
they also represented E. W. Clark & Company. There was
evidence that Edmund D. Smith was also the representative of
the Wheeling Steel Works of Philadelphia. On October 24,
1890, Edmund D. Smith & Company wrote plaintiff a letter
which contained the following passage:

" You understand the game. Now play it as though you
were moving chessmen. . . . We certainly did not expect to
keep the Wheeling people in suspense so long, but, then, if we
encroach a little on their good nature and they get mad in con-

sequence, we look to you to get them out of their 'mad.' At this distance we can stand it with perfect equanimity, but, really, we are sorry for you when you take your trips to Wheeling. But then that is what you are paid for. How do you think Wheeling would like to cancel the order."

In another letter they said:

"We, however, expect to arrange with Mr. Houston to give us specifications for a thousand tons. You will then have to play the Wheeling people along by giving them shipping directions for 500 tons and holding back shipping directions for the balance."

In a letter of September 27, 1890, to Vandevort & Company, Limited, Smith said:

"Clark's Steel. In reference to this material, we certainly think it will be to our interest to work the matter so that Clarks may get out with as little loss as possible, and if any converting arrangement can be made that will help in reducing their loss, it would pay us, in the long run, to sink any small commission we might have in the matter, and would encourage them to future business in this line. We feel that we have just made a start with this firm in handling their steel, as they have handled large quantities of it heretofore, and we know they will appreciate our efforts to get them out with as little loss as possible, and that it will pay us handsomely in the future, in the shape of new business. Any arrangement your fertile brain can work up to this consummation, we will be glad to hear of, and to submit them. If you are as successful in 'converting' arrangements as you are in 'puddling' arrangements, the field opened is a large one. We are trying to negotiate a sale to-day on their account with the Lukens Iron & Steel Company for 1,000 tons for October delivery, and are doing our best to get $29.75 Wheeling for this material. We have not succeeded in doing this yet, but are waiting a telegram from them on the subject. Any work we do at this end in the steel business we do not charge Clarks any commission, and we think it is good judgment to waive commission to them on a losing transaction in view of future business."

Other facts will appear from the following portions of the charge of the court:

. . . . This action is founded upon a contract made with the Wheeling Steel Works, which is another corporation of the state of West Virginia, and is not a party to this suit. Ordinarily, of course, there could be no recovery against a defendant upon a contract made by the plaintiff with some other person than the defendant; but where, as is admitted to be the fact in this case, the party with whom the contract was made transfers all its property and business to the defendant, with a contract to pay the debts of the concern, that in Pennsylvania gives a right of action directly against the party who has agreed to pay the debts, and if there is to be any recovery at all, it is admitted here very frankly by the defendants that. they are in that position, having purchased the property and effects of the Wheeling Steel Works, and for the purposes of this case stand in their shoes, so that that question is not now in the case. .. . .

The contract here consists, as testified to by the plaintiff and not denied, first, of an oral conversation or agreement between these parties as to the sale by the Wheeling Steel Works to Clark & Company, of Philadelphia, of 5,000 tons of Bessemer steel billets and slabs, and of a letter addressed by Vandevort & Company, Limited, to the Wheeling Steel Works, in which it is stated that it is understood "that you are to allow us twenty-five cents per ton commission upon this sale," and the reply of the Wheeling Steel Works to that, stating that they returned the contract for the 5,000 tons of steel. That would be an acceptance of the terms of this letter, and would be an agreement on the part of the Wheeling Steel Works to pay Vandevort & Company twenty-five cents a ton. Upon the face of that contract, and without anything else in the case, I would say that the contract meant that this money was earned and the twenty-five cents per ton was due upon the signing of the contract.

There are, however, one or more circumstances in the case from which you might infer that that was not the proper meaning of the contract—two circumstances, perhaps, to be considered in determining that. In the first place, after this contract was made in June, 1890, Vandevort & Company proceeded to negotiate between the Wheeling Steel Works and the purchasers from them, Clark & Company, in regard to the deliveries, and carried on a very considerable and extended correspondence

about that matter, and after the only deliveries were made which were ever made, in fact, Vandevort & Company rendered to the Wheeling Steel Works a bill for commission on steel sold E. W. Clark & Company, 1,512 tons at twenty-five cents, $378, and received payment for that amount. Now, from those two circumstances, from the fact of their carrying on this correspondence afterwards about the deliveries, and in regard to the postponement of deliveries and so on, and the rendering of the bill in this shape, you are at liberty to infer, if you think that was the case, that the contract was not to pay twenty-five cents per ton immediately, or at all events, but that it was contingent upon the delivery of the iron.

You heard, however, the explanation of Mr. Vandevort in regard to that. As to the correspondence, he says that it was carried on, as I understood him to say, practically for the accommodation of these parties, because he was here in Pittsburg, and had telephone communication with Wheeling; and Smith & Company were in Philadelphia, and in easy communication with Clark & Company, and, as a matter of convenience, they carried on this correspondence along with their other correspondence about other transactions and other people, and that it was a mere matter of accommodation and convenience to these parties to do that, but that he considered the money earned, as the letter would appear to indicate it was, when the contract was originally made, and that he did not have to depend upon the delivery. As to the rendering of a bill, you heard his statement that he believed he had rendered a bill for the whole amount at first, but that it was not customary to call for the payment of the money until the deliveries were made, and that then, having received a statement from the Wheeling Steel Works that they had delivered so much, he called upon them by this bill to pay that amount, but he didn't mean to indicate by that that it was all they owed him at that time; but he didn't expect them to pay it until they had made delivery, or some equivalent to delivery. . . . If you should find that the plaintiff was not to get the money unless the steel was delivered, or unless the defendant received the benefit of the contract, at least, then it would be necessary to consider whether or not, in the absence of delivery, the fact that they had sued and recovered damages for the breach of the contract, would

entitle the plaintiff to his money in the same manner as if the steel had been delivered. As the contract is in writing here, but the conduct of the parties in regard to it was such as to allow you to infer that it was somewhat otherwise than the writing would by itself appear to indicate, I will leave it to you to say whether or not under all the evidence the recovery of judgment by the Wheeling Steel Company against Clark & Company, thereby obtaining damages for the breach of this contract, whether under all the circumstances the money was then earned.

If you are of opinion that under all the evidence, taking the contract as you find it to have really been, that he is not entitled to recover, you will say so and that will dispose of the whole case and you will find a verdict for the defendant. But if you should think that the defendant here, while it did not actually deliver the iron and get paid for it, having recovered the damages for the nondelivery of the iron, is liable under the contract as you should find it to be modified and interpreted by the acts of the parties, then the next question would be whether the defense which is set up by the defendant is a sufficient one, and I have no hesitation in saying to you, gentlemen, as has been stated here by counsel, that this is a new and somewhat difficult question, and I am not at all sure that what we will do in the matter will be right. It is claimed by the defendants, and not denied, in part at least, that this firm or limited partnership of Vandevort & Company, which is the plaintiff in this case, for you will understand it is not Mr. Vandevort himself that is plaintiff, but Vandevort & Company, Limited, that this firm was composed of some six gentlemen; that these gentlemen were all of them managers of the firm, under the limited partnership law; that two of these gentlemen who were managers of this firm, Smith & Mendinhall, were partners in this same business of iron brokerage in which the plaintiff was engaged, and had their office in Philadelphia, and as such were agents for Clark & Company, who bought the steel. And it is contended by the defendant that the mere fact that the brokers for the purchaser were managers of this limited partnership, which was the broker of the defendant, deprives the plaintiff of the right to recover any commission, it not appearing, for one thing, that the defendant knew that Smith & Company were members of this firm which they had employed as brokers. It is further

contended by the defendant that this firm of Smith & Company, who were managers of the plaintiff firm, disregarding the duty which it is claimed they owed as members of the firm of Vandevort & Company to the defendant, made representations to the defendant in behalf of their client, the purchasers, Clark & Company, endeavoring to induce them to postpone these deliveries, and that such action was in bad faith and injurious to the defendants, and whether injurious finally or not it was not good faith towards the defendant company, and therefore the plaintiff company, some of whose managers these men were, cannot recover.

The remainder of the charge is sufficiently quoted in the opinion of the Supreme Court.

The court refused to give binding instructions for plaintiff.

Verdict and judgment for plaintiff for $1,205.98.   Defendant appealed.

*Error assigned* was refusing binding instructions.

*Edwin W. Smith,* with him *P. C. Knox* and *James H. Reed,* for appellant.—It was the duty of F. F. Vandevort & Company, Limited, to disclose to the Wheeling Steel Works that Edmund D. Smith and W. G. Mendinhall, two of its managers, were acting adversely to them : Mechem on Agency, sec. 952; Frankel v. Wathen, 59 Hun (N. Y.), 543.

There is no question that if the agent was acting for both parties there can be no recovery of his commissions : Everhart v. Searle, 71 Pa. 256 ; Cannell v. Smith, 142 Pa. 25 ; Rice v. Davis, 136 Pa. 442 ; Finch v. Conrade, 154 Pa. 330 ; Mechem on Agency, sec. 643.

*Wm. W. Ford,* for appellee.

Opinion by Mr. Chief Justice Sterrett, Dec. 30, 1899 :

This suit was brought to recover commissions on a sale of steel by the Wheeling Steel Works to E. W. Clark & Company of Philadelphia, effected on June 29, 1890, through the agency of the plaintiff company.   The defendant company afterwards became the successor of the Wheeling Steel Works.   In so do-

ing it assumed that company's obligations, and is thus rightly on the record as defendant.

The only specification of error before us is the refusal of the learned trial judge to affirm defendant's request for instructions, viz : that " under all the evidence in the case the verdict must be for the defendant."

As disclosed by the evidence the facts and circumstances of the case, so far as they are material and necessary to a proper understanding of the question presented by the record, are sufficiently stated in the charge of the learned trial judge, and need not be repeated here.    After referring at some length to plaintiff company's contention that its commissions were earned and payable when it procured an acceptable purchaser for the steel and the contract of sale was duly signed by the proper parties, and that its right to recover the residue of its commissions was not in any way affected by the subsequent refusal of the purchasers, E. W. Clark & Company, to accept the greater part of the steel contracted for, etc., he submitted the question to the jury as one of fact for their determination, and instructed them, inter alia, as follows : " Taking the letter, and the conduct of the parties as interpreting the letter, and the fact that this bill of December 30 was rendered to them in this way, whether or not it was the understanding of the parties that they should be paid whether there was a delivery or not, and whether the recovery of damages in the suit, the record of which has been put in evidence here, takes the place of that, and as you find that you will find your verdict.    If you find that this arrangement was that the plaintiff company should be paid at all events when the contract was made, or if it was carried out in any way by getting the value of the contract, then you will find for the plaintiff for the balance unpaid of twenty-five cents a ton, and if you do not so find, your verdict will be for the defendant."

He also referred particularly to defendant's contention that certain specified acts, etc., of plaintiff company were in bad faith and injurious to the defendant, etc., and therefore plaintiff could not recover.    In this connection he refused to charge the jury as matter of law that the plaintiff could not recover, but recurring to the same subject at the close of his charge he instructed them as follows : " It is claimed by the defendant

that taking the letters which have been put in evidence written by Smith and Mendinhall to Vandevort & Company, together with the actions of Vandevort or Vandevort & Company in Pittsburg, whoever were representing the company in Pittsburg, towards the Wheeling Steel Company, the letters that they wrote to them or the postponements that were actually procured, taking all that evidence together it tends to show that Vandevort & Company acted in bad faith towards the Wheeling Steel Works. Now the mere letters that Smith & Company wrote to Vandevort & Company I hardly think of themselves amount to bad faith; they amount practically to suggestions of doing things that would not be right. If these suggestions were not followed out and something done upon them, then I take it they would not amount to anything; but if you are of opinion from all this evidence that these suggestions of Smith & Company to put off Wilson & Company and keep these deliveries off were acted upon in any way by Vandevort & Company, or whoever represented them in Pittsburg, and if Vandevort & Company did not act in every way in good faith towards the Wheeling Steel Works, then they are not entitled to recover. That I say is contended by the defendant, and that I will tell you is the law. If you believe that they did not act in good faith, taking the whole of the evidence together, then you will find a verdict for the defendant."

Both questions of fact submitted as above stated were found by the jury in plaintiff's favor, and inasmuch as no error is assigned to the instructions under which said questions were submitted, the implied finding of the jury as to both must, for the purposes of this appeal, be accepted as correct. But that does not eliminate from this case the question presented by the single specification before us, viz: Whether, in view of all the evidence in the case, oral and written, relating to the alleged bad faith of the plaintiff company and one or more of its members, it was not the duty of the learned trial judge to withdraw the case from the jury by instructing them as matter of law that the bad faith of the plaintiff was a bar to its recovery, and their verdict must therefore be in favor of defendant. In other words, was the question of bad faith one of fact for the jury under all the evidence, or was it a question of law for the court alone? If the learned judge erred in refusing the binding instructions

requested by the defendant the judgment should be reversed. After a careful consideration of all the evidence bearing on the subject we are all satisfied that the question was properly one of fact for the jury, and that there was no error in refusing defendant's point. While the evidence relied on by the defendant does undoubtedly tend to prove the alleged bad faith of the plaintiff company, we cannot say that it was sufficient, without more, to have warranted the court in directing a verdict for the defendant. Such binding instructions must be based on facts which are either admitted or clearly established by undisputed evidence. When facts are to be found from testimony or inferred from other proved facts or circumstances in the cause, or when general inferences of fact are to be drawn from all the evidence relating to a given question or subject, it is the duty of the jury and not of the court to make such findings and draw such inferences and conclusions of fact. In view of all the items of evidence bearing on the subject of plaintiff's bad faith in this case we think the learned judge rightly held that it presented a question of fact which should be submitted to the jury. As to whether the jury should have reached a different conclusion from that implied by their verdict or not, we are not required to express any opinion.

Judgment affirmed.