.207    505
s219    517

## Fry *v.* National Glass Company, Appellant.

*Evidence—Parol evidence—Contract—Written contract.*

Though for accident or mistake clearly appearing, written contracts may be reformed and discharge given from their terms as the parties wrote them, there can be neither reformation nor relief when asked for by one of the parties to the contract because the other said at the time it was entered into that its words did not mean the only thing they could have meant. There can be no deception where deception is impossible, and no fraud where, by exercising one's ordinary intelligence, he cannot be imposed upon.

An owner of a glass works sold his plant to a corporation by written contract in which he agreed to have executed and delivered to the corporation a certain gas contract, which he was subsequently to obtain from another corporation. The gas contract was subsequently obtained from the other corporation and an assignment of it tendered to the purchasing corporation. The latter refused to accept the assignment of it because it had been notified by the gas company that the latter would not recognize the assignment, or furnish gas under the contract to the corporation. Suit was then begun against the corporation to recover a part of the consideration which had been retained. Plaintiff testified that at the time he signed the contract, an officer of the corporation who drew up the contract, had represented to plaintiff that the clause relating to the gas contract merely meant that if plaintiff did secure a gas contract, he would deliver the same to the corporation without any additional compensation, or charge therefor, and that plaintiff with this understanding as to the meaning of the clause signed the agreement, and would not have signed it but for said understanding. *Held,* that the parol evidence was insufficient to vary the terms of the written agreement.

Argued Oct. 29, 1903. Appeal, No. 70, Oct. T., 1903, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1901, No. 95, on verdict for plaintiff in case of George W. Fry *v.* National Glass Company. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit on a written contract. Before BROWN, J.

The facts are stated in the opinion of the Supreme Court.

The defendant presented, inter alia, the following point:

1. The evidence on the part of the plaintiff in this case is insufficient to affect the written contract upon which the plaintiff brought his original action, and that contract will accordingly be considered by the jury as the final and only contract between the parties relative to the sale of the Uniontown plant of the George W. Fry Company to the National Glass Company. *Answer :* Refused.

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Error assigned* among others was above instruction.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* for appellant.—Parol evidence was insufficient to submit to the jury: Duffield v. Hue, 129 Pa. 94; Cochran v. Pew, 159 Pa. 184; Baugh v. White, 161 Pa. 632; Martin v. Bernes, 67 Pa. 459; Baer's App., 127 Pa. 360; Bowman v. Tagg, 19 W. N. C. 147; Yeager v. Yeager, 20 W. N. C. 384; Stull v. Thompson, 154 Pa. 43; Krueger v. Nicola, 205 Pa. 38.

*Warren I. Seymour,* with him *H. H. Patterson, E. W. Arthur, Clarence Burleigh* and *James C. Gray,* for appellee.—The law of Pennsylvania now is, and always has been, that parol evidence of a contemporaneous promise or agreement, made for the purpose of inducing and which did induce the execution of a written contract is admissible, although it contradict or vary the terms of a written contract: Campbell v. McClenachan, 6 S. & R. 171; Miller v. Henderson, 10 S. & R. 290; Levy v. Moore, 1 Phila. 325; Shughart v. Moore, 78 Pa. 469; Lippincott v. Whitman, 83 Pa. 244; Phillips v. Meily, 106 Pa. 536; Bown v. Morange, 108 Pa. 69; Thomas v. Loose, 114 Pa. 35; Cullmans v. Lindsay, 114 Pa. 166; Honesdale Glass Co. v. Storms, 125 Pa. 268; Ferguson v. Rafferty, 128 Pa. 337; Sidney School Furniture Co. v. Warsaw School District, 130 Pa. 76; Com. v. Julius, 173 Pa. 322; Smith v. Harvey, 4 Pa. Superior Ct. 377; American Harrow Co. v. Swoope, 16 Pa. Superior Ct. 451 ; McCormick Harvesting Machine

Co. v. Nicholson, 17 Pa. Superior Ct. 188; Sutch's Est., 201 Pa. 305.

OPINION BY MR. JUSTICE BROWN, January 4, 1904:

In the spring of 1900, George W. Fry, the appellee, was the owner of a glass plant situated at Uniontown, this state. He was about to turn it into a corporation to be known as the George W. Fry Company, and entered into negotiations with J. V. Thompson and others, who were drilling for gas in the vicinity, which resulted in an arrangement that if they found gas in sufficient quantity, they would supply the factory of the proposed corporation with it at the rate of two and one half cents per thousand cubic feet for the first year and three cents per thousand cubic feet for the second year. Before the incorporation of the company Fry entered into a contract with the appellant for the sale of his plant to it in consideration of its issuing to him 1,000 shares of its capital stock. The present controversy arises from the following clause : " Said party of the first part agrees to have executed and delivered to the party of the second part a certain gas contract with the Uniontown Gas Company to supply above described works with gas for a period of two years from the time of turning gas into meter for use in said factory at the following rate : For the first year two and one half cents per one thousand cubic feet, and for the second year at the rate of three cents per one thousand cubic feet."

The appellant issued to the appellee 800 of the 1,000 shares, and retained the remaining 200 as security for his fulfillment of his agreement to have the gas contract executed and delivered to it. The Uniontown Gas Company was not formed, but substantially the same parties that had proposed to organize it became incorporated under the name of the Menallen Gas Company, and, on March 30, 1901, they entered into a contract with the George W. Fry Company to supply it with gas at the rate of two and one half cents per thousand cubic feet for the first year and three cents per thousand cubic feet for the second year. On April 29, 1901, Fry tendered this contract to the appellant, but the same was refused, because the glass company, according to its testimony, had been notified by the officers of the gas company that they would not furnish it gas under the contract with the George W. Fry Company. In re-

ferring to this contract the learned trial judge correctly instructed the jury that "if there were no parol modification of the gas section in the written contract between the plaintiff and the defendant, the defendant was not bound to accept it, nor an assignment of it, for it was entitled to a full delivery, clear of prospective litigation, and of difficulties arising, or likely to arise, upon the refusal and notice of refusal of the gas company to deliver gas under it." Upon the refusal of the company to accept an assignment of this contract from Fry, he brought the present suit for the value of the 200 shares retained, and a verdict was rendered in his favor, the court having submitted to the jury the question of a parol modification of the written contract before it was executed, which had induced the plaintiff to sign it.  .

If there had been a parol agreement between the parties before and at the time of the execution of the written one, which was omitted from it by fraud, accident or mistake, and such omission resulted in damage to the plaintiff, or if there had been an oral cotemporaneous promise not inserted in the writing, which was the inducement to the appellant to sign it, and the appellee had afterwards attempted to make an improper use of it, the plaintiff's case would have been for the jury, provided his allegations and proofs were such as the law requires. But the case presents neither of these features, and, far as we have sometimes gone in allowing solemn written compacts to be explained away by oral testimony, what is asked for here exceeds the limit.

Turning to the averment in plaintiff's statement why he should not have executed and delivered to the appellant a gas contract with the Uniontown Gas Company, in accordance with his agreement, we find it to be simply that Myron L. Case, the officer of the company who drew it up, represented " to plaintiff that the clause aforesaid merely meant that if plaintiff did secure a gas contract, he would deliver the same to the defendant company without any additional compensation or charge therefor. Henry C. Fry, president of defendant company, subsequently assented to and ratified these representations and with this distinct and express understanding as to the meaning and intent of said clause, plaintiff and said Henry C. Fry signed the agreement, nor would plaintiff have signed same but for

said understanding." The testimony upon which he relies proves nothing but this allegation of the construction placed by Case upon the words of the contract. Called as a witness in his own behalf, he testified as follows, when speaking of what took place between himself and Case at the time the agreement was written by the latter: " Q. Go on and give the conversation between you and Mr. Case at that time. A. Mr. Case read it and I said: ' Mr. Case, that is not correct. I did n't agree to furnish any gas contract at all excepting if I got it. These people have only agreed to develop the field, and if they get gas, we are to have it at that price.' Q. At that time had they procured any gas? A. They had not. Q. What reply, if any, did Mr. Case make? A. Mr. Case said it only meant that if I secured the gas contract it would belong to the George W. Fry Company—not to me personally, I presume. Q. And was that the conversation and the whole of the conversation between you and Mr. Case at that time? A. I said: ' Then, with that understanding, Mr. Case, I will sign the agreement; with that understanding.' " H. C. Fry, the brother of the plaintiff and the president of the glass company referred to in the statement, in testifying as to exactly what took place when the contract was signed, said: " Q. Was your brother present? A. No, sir; I sent for my brother to come to the office, and stated to him that this was not the contract as we had made with him, containing a gas clause, which I was very doubtful if he could carry out or not. He said Mr. Case had insinuated that if he got the gas contract, he might not turn it over to the National Glass Company, and as he was sure of getting it at any rate, he had agreed to sign this. I said: ' Very well, are you perfectly satisfied to sign it in this way?' He said: ' With that understanding, I am.' Q. With that understanding? A. With the understanding that he was simply to turn the gas contract over when he got it. I says: ' Very well, if you are satisfied to sign this in that shape, I will sign it.' Then I attached my signature to it. " Q. Did your brother then sign it? A. I am not clear whether my brother had signed it before, or whether he went into Mr. Case's office and signed it. I can't get that matter clear in my head, but I am positive that I sent for George W. Fry and explained to him the difference in this contract as written by Mr. Case and the

contract that he had made, and pointed out the danger.   He said: ' With that understanding with Mr. Case, I am ready to sign the contract.'   I says: ' All right,' and I signed it, and that was an end of it so far as I was concerned."   It is true H. C. Fry does state that he signed the contract with the understanding that his brother was simply to turn the gas contract over when he got it, but he gives the words of his brother as having been "with that understanding with Mr. Case."   The brother had already stated just what had taken place between him and Case, which was simply that Case had said the words did not mean what they expressed.   Case contradicts the appellant as to what took place between them, but, even if he was uncontradicted, the appellee has testified to nothing that can relieve him from his obligation to the appellant to have executed and delivered to it the gas contract stipulated for in his agreement with it.

There is neither allegation nor proof that any unkept promise of the appellant was improperly omitted from the written contract because it formed a part of it; and no unfulfilled agreement of the appellant inducing the appellee to sign the writing is averred or proved.   The averment and proof simply are that he was told that words which can have but one meaning, not one of them having a latent or ambiguous meaning, which lawyer and layman read alike, and which the appellant himself says he understood when they were read to him, now mean something else, because he was told so by the man who read them to him.   As well might he say that he ought to receive 2,000 shares of the National Glass Company stock for the sale of his property to it, because he was told that 1,000 meant 2,000 by the person who prepared the contract.   There would be as much justification for such a contention as for the one now made.   Though for accident or mistake clearly appearing, written contracts may be reformed and discharge given from their terms as the parties wrote them, there can be neither reformation nor relief when asked for by one of the parties to the contract because the other said at the time it was entered into that its words did not mean the only thing they could have meant.   There can be no deception where deception is impossible, and no fraud where, by exercising one's ordinary intelligence, he cannot be imposed upon.

The judgment must be reversed, but, as under the defendant's plea of set-off, it may be entitled to a certificate in its favor, a new trial is awarded.

Judgment reversed with a venire de novo.