## Fry *v*. National Glass Company, Appellant.

*Charge—Points—Construction of contract—Fraud.*

Where in an action on a contract the plaintiff presents a point for the construction of the contract, and the court affirms the point, the defendant cannot assign as error an addition to the affirmance, to the effect that the mere fact of the affirmance would not of itself entitle the plaintiff to recover. Such an addition was obviously made by the court to prevent the jury from misunderstanding the answer to the prejudice of the defendant.

Where a contract is attacked on the ground that one of the parties obtained it by stating that he was not acting for any corporation or trust, and the party avers that at the time he made the statement it was true, and that he was only acting for himself, the question of fraud on the conflicting evidence is for the jury; and the court would not be justified in taking the case from the jury because the party subsequently entered into an arrangement with a corporation or trust.

Fraud in fact is always a question for the jury, and however convincing may be the evidence on the subject, it would be to confound the province of the two tribunals for the court to assume the decision of it.

Argued Nov. 5, 1907. Appeal, No. 128, Oct. T., 1907, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1901, No. 95, on verdict for plaintiff in case of George W. Fry v. National Glass Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Assumpsit on a contract. Before MACFARLANE, J. See 207 Pa. 505.

The court charged in part as follows :

In 1900 Mr. Fry says that he had an option on the Uniontown glass plant, and, as he wanted natural gas, he entered into negotiations with some gentlemen there who had not taken out a charter, but they called themselves the Uniontown Gas Company, to secure a supply of gas, and he seems to have had a verbal promise from them that they would give him gas for this factory when they secured it. He then entered into the written contract, dated May 21, 1900, with

the defendant company for the sale of this plant and for
the securing of the gas contract.  He agrees to make a suffi-
cient warranty deed for this property, and he agrees to have
executed and delivered to the party of the second part (that
is, the National Glass Company, the defendant here, and no
one else), a certain gas contract with the Uniontown Gas
Company to supply the above described works with gas for a
period of two years from the date of turning gas into the me-
ter for use in said factory, at the following rates : For the
first year, two and a half cents per thousand cubic feet, and
for the second year, at the rate of three cents per thousand
cubic feet.  This seems to have been considered a favorable
contract and a desirable one for that factory.

\*     \*     \*     \*     \*     \*     \*     \*

You have then, to repeat, a contract which has not been
performed.  Mr. Fry says that along in the spring of 1901,
perhaps late in the winter, he was told by some of the officers
of this company, the National Glass Company, to have this
gas contract made out in the name of the George W. Fry
Company.  His son, Thomas Fry, who was at that time in
the employ of the glass company, employed at these very
works, says that he was told by the secretary or the treasurer
—perhaps he said both, I am not sure, but I think he said they
were both there, something of that kind ; you will remember
that—to get this contract made in the name of the George W.
Fry Company.  Further, the plaintiff stated that among those
who told him this was his brother, the president of the com-
pany, Henry C. Fry.  Henry C. Fry says that he has no recol-
lection of giving any such instructions, and it is denied by Mr.
Thompson and Mr. Case that they gave any such instructions.
Mr. Case, as I recall it, was not quite so positive in his state-
ment.  He simply said, " I do not recall ; I have no recollection
of this."

\*     \*     \*     \*     \*     \*     \*     \*

If you find that this contract was changed, and that Mr. Fry
was told substantially to go to the gas people and get a con-
tract with the George W. Fry Company, and that he did go
and got this George W. Fry Company contract, exhibit " B "
in this case ; that he brought it to the company, Mr. Case, I
believe, in April, 1901, and offered it.  It is conceded that he

brought it there and offered it and it was refused, and then you would have the question whether the defendant had a right to refuse it. They had a right to a contract for the supply of gas for these works for two years at two and a half cents the first year and three cents the second year.

If you believe the witnesses for the defendant, and they are to a partial, extent corroborated by the testimony of the plaintiff, that the contract which George W. Fry made with the Menallen Gas Company for the supply of gas to the George W. Fry Glass Company was obtained on the faith of his representation and statement that he was not connected with any corporation or trust, and this statement turned out to be untrue before the contract was entered into, and for this reason the Menallen Gas Company refused to deliver gas under said contract with the George W. Fry Glass Company, then your verdict should be for the defendant for such amount as would compensate it under the rule I will give you presently.

\*      \*      \*      \*      \*      \*      \*      \*

It is upon that that I have instructed you, that, if you believe that this gas contract was obtained upon the faith of that representation—it is for you, but my opinion is that the circumstances will show that it was—and they notified this company that they would not furnish them gas, that is an end of the plaintiff's case and he cannot recover.

It is true, as stated in the third point of the plaintiff, " Under the terms of exhibit ' No. 3,' the Menallen Gas Company would have been compelled to furnish the Uniontown plant with gas on the terms as provided in the contract marked exhibit ' A.' "

This point is affirmed, with the addition that it would have been obliged to furnish gas to the George W. Fry Glass Company, but those terms by themselves convey in no way the idea that this entitles the plaintiff to recover. [1]

If it was true that Mr. Fry told the gas people that he was not connected with any trust—and he admits that he said he was not connected with any corporation—and they found this out after they made the contract with the George W. Fry Company, if they made that contract with that understanding and did not know that he had turned this property over to the National Glass Company, then they had a perfect right to refuse

to go ahead and furnish any gas, even though on the face of the contract, by its terms, there was an obligation on their part to do so.

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* were (1) answer to plaintiff's third point, quoted in the charge ; (2) answer to defendant's second point, quoted in the opinion of the Supreme Court ; (3) refusal of binding instructions for defendant ; (4) refusal of judgment for defendant non obstante veredicto.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* for appellant.

*Warren I. Seymour,* with him *H. H. Patterson* and *H. K. Siebeneck,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 6, 1908:

In a former trial of this case, the plaintiff set up a contemporaneous oral agreement for the purpose of modifying a written contract. Upon appeal to this court (Fry v. National Glass Co., 207 Pa. 505), we held that evidence of the parol agreement was inadmissible, and reversed because it was admitted. A new trial was awarded, because the defendant had pleaded set-off, and might be entitled to a certificate in its favor. After the record had been remitted to the court below, plaintiff filed an amended statement, in which it was averred that " Subsequent to the execution of said contract defendant company instructed and directed this plaintiff to have said certain gas contract, above referred to, executed in the name of the George W. Fry Company, which was in due course duly incorporated and organized, and for the entire time of the events herein recited, existed as a corporation under the laws of the State of Pennsylvania. Said incorporation of the George W. Fry Company, and its management subsequent to said incorporation, was conducted by the defendant company. It was officered and managed exclusively by defendant company, and was for all intents and purposes part and parcel of the National Glass Company, defendant

above named, the sole purpose and object of keeping up its separate corporate existence being for the purpose of thereby obtaining illegal and unwarranted rebates from the Glass Association." This was denied by the affidavit of defense. Upon the succeeding trial, the plaintiff offered testimony in support of these averments, and the case was submitted to the jury, who found in favor of the plaintiff. Judgment was entered upon the verdict, and defendant has appealed.

The first assignment alleges error in affirming plaintiff's third point, which asked for a construction of the agreement between the Fry company and the incorporators of the glass company. The court added to the affirmance a statement that the obligation was to furnish gas to the Fry company, and cautioned the jury that this fact of itself, would not entitle plaintiff to recover. This instruction was clearly right and it is manifest that the court was endeavoring to prevent the jury from misunderstanding his answer, to the prejudice of the defendant. This is emphasized by referring to the oral charge of the court in connection with the presentation of this point.

The second assignment of error complains of the refusal to affirm defendant's second point, which was " If the jury believe the uncontradicted evidence of the plaintiff, and of the witnesses for defendant, that the contract which George W. Fry obtained with the Menallen Gas Company for the supply of gas to the George W. Fry Company, at the rate therein mentioned, was obtained on the faith of his representation and statement that he was not connected with any corporation or trust, and this statement turned out to be untrue before the contract was entered into and for this reason the Menallen Gas Company refused to supply gas under said contract to the George W. Fry Glass Company, then the verdict of the jury should be for the defendant for such amount as will compensate it, under the evidence, for the excessive amount paid by it for gas during the term of the contract over and above the price of gas as fixed in said contract."

The difficulty with this point, is that it does not accurately state the evidence of the plaintiff. His answers do not show clearly what was in his mind, but while admitting that in securing the gas contract, he stated that he was not acting for

any corporation or trust, he denied that he made the statement as an inducement to get the contract for the gas. He insists also that at the time he made the statement that he was not acting for a trust, but was acting for himself, it was true. How then could the trial judge have said that this statement, if true at the time made, afterwards became untrue ? If plaintiff afterwards entered into arrangements with a trust, this would not falsify his previous statement, that he was acting for himself, when he so stated it. It would have been error to have affirmed this point.

The remaining assignments of error are to the refusal of binding instructions or to enter judgment non obstante veredicto for the defendant. The first ground upon which counsel rested, has been abandoned, as it is conceded that under the authority of Fries v. Penna. R. R. Co., 98 Pa. 142, and Spees v. Boggs, 204 Pa. 504, this case is not res adjudicata because of the decision in this court of the former appeal. If a reversal of a judgment without a new venire is not of itself a bar to a second action for the same cause, much less is a reversal with a new venire.

The other ground upon which binding instructions were asked is that the gas contract was obtained by plaintiff by fraud and misrepresentation, and was therefore not enforceable or assignable. But it appears from plaintiff's rebuttal testimony that he denied the fraud, and this would take the question to the jury. The case turned upon oral evidence, and under the authorities it must have gone to the jury : see Vandevort & Co. v. Steel & Iron Co., 194 Pa. 118. The point is also discussed by our Brother STEWART in Bartlett v. Rothschild, 214 Pa. 421, where he says (p. 427): "It is never permissible in an issue of this kind for the court to direct a verdict for the plaintiff, except where the evidence is exclusively documentary and admittedly correct. Where plaintiffs' claim rests upon oral testimony, the credibility of the witnesses is always a matter to be passed on by the jury, and the court cannot relieve them of it. . . . Again in Grambs v. Lynch, 20 W. N. C. 376, a case cited and applied later in Harlow & Co. v. Homestead Boro., 194 Pa. 57, it is declared to be 'settled law that when a case depends upon oral testimony, such testimony must be submitted to the jury.' Here the plaintiff's

case rested almost wholly upon oral testimony; if believed by the jury, it established a prima facie case, and entitled the plaintiff to a verdict; but the jury alone could say through their verdict, whether the condition had been met."

The fact that the question here involved was one of fraud, is an additional reason why the court should not have given binding instructions. "Fraud in fact is always a question for the jury, and however convincing may be the evidence on the subject, it would be to confound the province of the two tribunals for the court to assume the decision of it:" Loucheim v. Henszey, 77 Pa. 305.

The assignments of error are all overruled, and the judgment is affirmed.