# Page *v.* Moore, Appellant.

*Practice, C. P.—Judgment n. o. v.—Binding instructions—Bankruptcy.*

1. Where the court at the trial cannot give binding instructions, it cannot enter judgment non obstante veredicto thereafter.

2. In an action by a trustee in bankruptcy to recover the value of bonds alleged to have been wrongfully taken from the bankrupt by the defendant, where the defendant contends that he had taken the bonds for the purpose of delivering them to their owner to whom he alleged, they had been previously assigned, and the evidence is conflicting as to whether there was a valid consideration for the assignment, the case is for the jury; and if a verdict is rendered for plaintiff, the court cannot thereafter enter judgment n. o. v. for the defendant.

*Contract—Illegal contract—Building contract—Architect.*

3. An agreement by a building contractor to pay bonds to the architect of the owner for services in overseeing the work, or for securing the award of the contract, is illegal.

Argued Jan. 17, 1912.   Appeal, No. 133, Jan. T., 1911, by defendant from judgment of C. P. No. 1, June T., 1909, No. 438, on verdict for plaintiff in case of Howard W. Page, Trustee in Bankruptcy of Moore & Company, Incorporated *v.* William G. Moore.   Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.   Affirmed.

Trespass to recover for the alleged misappropriation of bonds belonging to the bankrupt's estate.   Before MAGILL, J.

From the record it appeared that on January 14,

1907, William G. Moore, Russell B. Smith and Harry T. McDevitt, who were engaged in a contracting business under the firm name of William G. Moore, entered into a contract with Bridgman Bros. Co., to erect for the latter on Fifteenth street south of Washington avenue, Philadelphia, a three story and basement factory building, under the direction of Milligan & Weber, architects. The cost was to be $62,200, to be paid the contractor partly in cash, partly in promissory notes and partly in bonds secured by a second mortgage on the property. The bonds were to be fourteen in number of a value of $7,000, being half of a total cost of $14,000, twenty-eight for $500 each. The fourteen bonds were to be deposited with the Merchants Trust Company of Philadelphia, to be delivered to the contractor at various times upon certificates of the architects that the work had been completed to the extent fixed by the contract for such deliveries.

On June 14, 1907, after work on the building had been commenced and was in progress, the partners in the firm of William G. Moore incorporated themselves in the State of New Jersey under the firm name of Moore & Company, Incorporated, and all the contracting business of the firm, including the unfinished contract with Bridgman Bros. Co., was transferred to the corporation. The building which was in course of erection, fell down in the early part of July, 1907, and it was necessary practically to rebuild it. Prior to the accident William G. Moore had received from the trust company on certificates from the architect, twelve of the fourteen bonds. He also received from the architects the day before the collapse of the building, a certificate entitling him to the remaining two bonds. This was not presented by him before the accident, and he did not receive the last two bonds until July 22, 1908, a year later.

On June 5, 1908, Howard W. Page was appointed by the Court of Common Pleas No. 2 of Philadelphia

county, receiver for Moore & Company, Inc., and subsequently that corporation having been adjudicated a bankrupt, he was made first Receiver, and then Trustee in the bankruptcy proceedings. While receiver in bankruptcy, Mr. Page entered into a contract of settlement with Bridgman Bros. Co., who had claimed a large offset to the contract price under their contract with William G. Moore, because of the delay in the completion of the work, due to the collapse of the original building. By this settlement mutual releases were to be given, and the receiver was to be paid $2,010 in cash and the two bonds for $500 each still in the hands of the trust company. William G. Moore, the defendant, was an active agent in effecting the settlement, and when it was completed, received both the cash and the two bonds from the trust company. The cash he turned over to the receiver by advice of his attorney.

After Mr. Page was appointed receiver on June 6, 1908, he sent his representative to the office of Moore & Company, Inc., in the Drexel Building, Philadelphia, to take possession of the assets of the company. The defendant, William G. Moore, who was president of the company, took from the safe ten bonds of the Bridgman Bros. Co., gave eight of them to the receiver's messenger, and retained two himself, saying that they belonged to the architect. It was to recover the value of these two bonds and the two subsequently received by defendant from the Merchants Trust Company, all of which he refused to deliver to plaintiff, that the present suit was brought.

Verdict and judgment for plaintiff for $2,528.70. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant and (2) in refusing motion for defendant non obstante veredicto.

*Henry P. Brown,* with him *D. Howard Evans,* for appellant.—There was an equitable assignment of the bonds: Henderson v. Jennings, 228 Pa. 188; Steiner v. Turner, 45 Pa. Super. Ct. 225; Ridgway v. Iron Works, 46 Pa. Super. Ct. 267; In re Ballantine, 179 Fed. Repr. 548; Citizens' Trust & Surety Co. v. Howell, 19 Pa. Super. Ct. 255.

One receiving property for the purpose of distribution may make distribution thereof to the real owners, even though he, at the time, be insolvent, and though the trust be secret: Phillips v. Kleinman, 232 Pa. 571.

The defendant was entitled to a judgment non obstante veredicto: Casey v. Canning, 39 Pa. Super. Ct. 94; Dalmas v. Kemble, 215 Pa. 410.

*Thomas Raeburn White,* for appellee.—Not only was there abundant evidence upon which the jury might have founded their verdict, but under the evidence no other verdict was reasonably to be expected: Morningstar v. Jamieson, 2 Sadler 80.

The alleged assignment was not an assignment, even if validly made, but was a mere agreement or promise to pay these bonds at some time in the future: Henderson v. Jennings, 228 Pa. 188; Penna. R. R. Co. v. Hughes, 39 Pa. 521; Newport & Shermans Valley R. R. Co. v. Seager, 19 Pa. C. C. R. 465.

OPINION BY MR. JUSTICE POTTER, February 19, 1912:

In this action the trustee in bankruptcy of Moore and Company sought to recover the value of four bonds which it was alleged were wrongfully taken from the bankrupt by the defendant and converted to his own use. The defendant contended that he had taken the bonds for the purpose of delivering them to their owner, Frederick Webber, to whom he alleged they had previously been assigned. The controversy turns upon the correct interpretation, and the legal effect, to be given to a letter written by the defendant to Mr. Webber on

December 29, 1906. The subject matter of the letter is as follows: "I am about to erect a four-story factory building for Bridgman Bros. at 15th and Washington avenue. The payments will include $7,000 in second mortgage six per cent. three year bonds against this property, endorsed by Bridgman Bros. individually. I hereby agree to assign to you irrevocably $3,000 of these bonds." Counsel for appellant contend that this letter constituted an equitable assignment of the bonds to Webber. The trial judge construed the letter to be sufficient in form to constitute an equitable assignment of the bonds, but submitted to the jury the question whether there was a valid consideration for such assignment. There was testimony on behalf of defendant, tending to show that Webber had secured certain sub-contracts for the firm of William G. Moore, on better terms than the firm could have secured them for itself, and that in recognition of his service in this respect, the firm had agreed to give him the bonds referred to in the letter. The trial judge instructed the jury that if they found that Webber did render such services, that fact would constitute a good and sufficient consideration for the bonds. The verdict of the jury was however against the contention of the defendant in this respect. We do not agree with the view of the trial judge that the letter from Moore to Webber in itself constituted an assignment of the six bonds in question: Henderson v. Jennings, 228 Pa. 188, is cited in support of that contention. There it was agreed that a mortgage was to be given as part consideration for a building contract, and it was held that the contractor might assign his interest in it before it had been executed, or was to be delivered under the terms of the contract. But it should be noted that one particular mortgage was the thing sold in that case. In the present instance the alleged assignment covers six bonds out of fourteen, without specifying any particular or specific bonds. Nor was the wording of the contract

in the present tense. It was not "I hereby assign," but "I hereby agree to assign." There was much, therefore, to support the contention of counsel for appellee that the letter was but an executory contract, and was not an assignment of the specific bonds in controversy. But appellant had the benefit of the ruling in his favor upon this question, and cannot complain of it here. We need not, therefore, give this point further consideration.

The only error alleged in the assignments is the refusal of the trial judge to give binding instructions, or to enter judgment non obstante veredicto for the defendant. As the establishing of facts material to the issue depended upon oral testimony, it would have been error if the court had taken the case from the jury: Second National Bank v. Hoffman, 229 Pa. 429; Fry v. National Glass Co., 219 Pa. 514. Where the court could not have given binding instructions, it cannot enter judgment non obstante veredicto thereafter. In Dalmas v. Kemble, 215 Pa. 410, Mr. Chief Justice MITCHELL said (p. 412) that under the Act of April 22, 1905, P. L. 286, the court "is to treat the motion for judgment as if it was a motion for binding directions at the trial, * * * (p. 413) If it should appear that there was conflict of evidence on a material fact, or any reason why there could not have been a binding direction, then there can be no judgment against the verdict now." In the present case there was a conflict of evidence. The consideration suggested by defendant for the assignment of the bonds, was questioned at the trial. It was shown that Webber was the architect of the building, and the agent of the owner, and as such it was his duty to award the contract, and to see that the building was erected in accordance with the plans and specifications. He awarded the contract to appellant. Obviously an agreement by a contractor to pay bonds to an architect for services in overseeing his work, or for securing the award, would be illegal. The

circumstances called for inquiry by the jury. It was also shown that upon another occasion, when testifying before the referee in bankruptcy, appellant had stated that the agreement was that this $3,000 was to be paid to Webber on account of his services as architect. In the present case appellant testified that this former evidence was given under a misapprehension. But his testimony was for the jury. It also appeared that in proceedings before the referee in bankruptcy, Webber had stated under oath that the bonds alleged to be assigned in the letter were given to him on account of services rendered as architect. It is not pretended that the transfer of bonds for such a consideration by the contractor would have been proper. There was also some evidence that defendant at first made claim to the bonds under an assignment to himself, and it appeared also that two of the bonds were entered in the investment account of Moore & Company, Incorporated, and remained there until the appointment of a receiver. All this was inconsistent with the claim that the bonds were the property of Webber, or that they were so considered, prior to the bankruptcy. It is clear therefore that the evidence was conflicting as to the real consideration for the assignment of the bonds. That the evidence offered upon the part of the plaintiff was, if credited by the jury, sufficient to support the verdict, we have no doubt.

Counsel for appellant also urge that the appellee is precluded from assailing the validity of the alleged assignment from Moore to Webber, by the fact that in his statement of claim he averred that the defendant, after taking and converting the bonds to his own use, "used them in the payment of an obligation personally owing by him to one Frederick Webber, who had done certain work for him," &c. The record does not show that the fact, or effect of this averment was raised in the court below. But at any rate the averment goes no farther than to charge that defendant used the bonds

to pay his own obligation. It does not in any way admit the validity of the claim of Webber to the bonds as against Moore & Company, Incorporated. In his testimony defendant alleged that when the bonds were delivered to Webber, they were the property of the latter, as he had become the owner by reason of the alleged assignment in the letter made some time previously. The essential question then presented for determination upon the trial was whether at the time when the bonds were delivered to Webber, they belonged to him, or were the property of the bankrupt estate. The verdict of the jury determined that question in favor of the estate, and thereby fixed the liability of the defendant. The burden was upon appellant at the trial to sustain his right to the bonds which he had taken, and the verdict shows that he failed to establish that right, to the satisfaction of the jury.

We find no merit in the assignments of error. They are dismissed, and the judgment is affirmed.