# Second National Bank of Pittsburg *v.* Hoffman, Appellant.

*Promissory notes—Indorser—Fraud—Act of May 16, 1901, P. L. 194—Banks and banking—Cashier—Interested witness—Question for jury.*

1. In an action by a bank against the indorser of a promissory note where the defendant shows that the note was procured from him by fraudulent act of the maker, the burden is upon the bank to show affirmatively that it was an innocent purchaser for value without knowledge of the fraud. If in assuming such burden the bank presents as its only witness its own cashier, the case must go to the jury so as

to permit that body to pass upon the credibility of the cashier, although his testimony may not in any way have been contradicted.

2. When the establishment of a question of fact depends upon oral testimony, the credibility of the witness or witnesses is for the jury alone, and it is their exclusive province to determine whether from such testimony the fact in dispute has been established.

Argued Oct. 6, 1910. Appeal, No. 199, Oct. T., 1910, by defendant, from judgment of C. P. Venango Co., Aug. T., 1908, No. 83, on verdict for plaintiff in case of Second National Bank of Pittsburg v. Taylor Hoffman. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit on a promissory note. Before CRISSWELL, P. J.

The opinion of the Supreme Court states the facts of the case.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $5,329.46. Defendant appealed.

*Error assigned* amongst others was (6) in giving binding instructions for plaintiff.

*Geo. E. Reynolds,* with him *Bryan H. Osborne,* for appellant.—Although a holder is deemed prima facie to be a holder in due course, yet when, as in this case, it was shown that the title of the person negotiating the instrument was defective, the burden was on the plaintiff to prove that it acquired the title as a holder in due course: Schultheis v. Sellers, 223 Pa. 513; Cummings v. Boyd, 83 Pa. 372; Royer v. Keystone Nat. Bank, 83 Pa. 248; Altoona Second Nat. Bank v. Dunn, 151 Pa. 228.

The evidence as to whether the plaintiff received the note in good faith and without notice of any defect in the title depended upon the credibility of witnesses and binding instructions for the plaintiff were improper: Reel v. Elder, 62 Pa. 308; Perkiomen R. R. Co. v. Kremer,

218 Pa. 641; Reeper v. Greevy, 5 Pa. Superior Ct. 316; Loeb v. Mellinger, 12 Pa. Superior Ct. 592; Colonial Trust Co. v. Getz, 28 Pa. Superior Ct. 619; McNight v. Parsons, 136 Iowa, 390; Allentown Nat. Bank v. Clay Product Supply Co., 217 Pa. 128; Sloan v. Union Banking Co., 67 Pa. 470; Knight v. Pugh, 4 W. & S. 445.

*Thomas P. Trimble,* of *Trimble & Chalfant,* with him *John L. Nesbit, R. F. Glenn* and *Chantler & McClung,* for appellee, cited: Lonzer v. R. R. Co., 196 Pa. 610; Battles v. Laudenslager, 84 Pa. 446.

OPINION BY MR. JUSTICE BROWN, January 3, 1911:

On April 10, 1908, the Second National Bank of Pittsburg was the holder of the note of W. C. and John M. McKee for $7,000, which matured on that day, but was not paid. A few days later the makers called at the bank and had an interview with its cashier, J. M. Young, who insisted upon payment of the obligation. When informed by them that they could not pay, he told them the bank would not embarrass them, if they would give it collateral security or a satisfactory indorsement, and it was then agreed that they would pay $500 on the note and give a new note with an indorser, payable on demand for the balance of $6,500. Shortly afterwards they made a note, payable on demand, for $6,500, dated April 10, 1908—the date of the maturity of the old note—and upon this new note John M. McKee procured the indorsement of the appellant. This is the obligation in suit. According to the testimony of the appellant, his indorsement was procured by fraud, and the note was fraudulently diverted from the use to which the makers agreed to put it. It was unquestionably delivered to the bank in payment of the balance due on the old note. This appears as clearly from the testimony of the defendant's witnesses as from those of the bank, and we need say no more of the contention of the appellant that it was given merely as collateral security for a pre-existing debt and subject,

therefore, to the rule as to such securities. The sole question to be disposed of is, whether the instruction of the trial judge to the jury to render a verdict in favor of the plaintiff was correct. They were directed to so find, because the court was of opinion that, under all the evidence in the case, it clearly appeared that the bank was an innocent holder of the note, without knowledge of any fraud that had been practiced upon the appellant in procuring his indorsement, and that the jury ought not to be permitted to find otherwise.

A holder in due course of a negotiable promissory note is one who, at the time it was negotiated to him, had no notice of any infirmity in the instrument or defect in the title of the person negotiating it: Negotiable Instruments Act of May 16, 1901, P. L. 194. The fifty-fifth section of that act provides that the title of a person who negotiates an instrument is defective within the meaning of the act when he obtains the instrument or any signature thereto by fraud; and, though the fifty-ninth section declares that every holder is to be deemed prima facie a holder in due course, that same section provides that when it is shown that the title of any person who has negotiated the instrument is defective, the burden is on the holder to prove that he, or some other person under whom he claims, acquired the title as holder in due course, that is, that he took it in good faith and for value and without notice of any defect in the title of the person negotiating it.

The jury would have been justified in finding from the testimony of the appellant that John M. McKee had procured his indorsement of the note in suit by fraudulent misrepresentations. The fraud which had been practiced upon him by McKee was not denied by the latter on the trial, and the learned trial judge properly told the jury that if the only question for their determination was this fraud they would be fully warranted in finding that it had been perpetrated. This being the situation, there was cast upon the appellee by the plain words of the act

of 1901 the burden of proving that it had taken the note in good faith and for value and without any notice of the fraud which had been perpetrated by McKee in procuring the indorsement of the appellant. To discharge this burden, so manifestly upon it, the appellee relied upon the testimony of J. M. Young, its cashier, who testified that he was the only officer of the bank who had anything to do in procuring the note from the McKees, and that he had no knowledge at the time he received it of any fraud that had been practiced upon Hoffman in procuring his indorsement of it. The learned trial judge fully understood that the burden was upon the bank to show that it had acquired the note without any notice or knowledge of the fraud upon Hoffman, and so charged the jury, but at the same time directed them to return a verdict for the plaintiff, because no witness had been called by the defendant to show any knowledge by the bank of the misrepresentations made to Hoffman, and the cashier had denied any knowledge of them. The defendant was not required in the first instance to show that the bank had knowledge of the false representations made by McKee to him, for after he had shown, as he clearly did show, that the fraud had been practiced upon him, the bank was called upon to show affirmatively that it had no notice of the fraud when it took the note in good faith and for value; and whether it had so taken the paper depended entirely upon the testimony of its cashier. In directing a verdict for the plaintiff the court, in effect, instructed the jury that they must believe that witness, and evidently, as we gather from the opinion refusing a new trial, relied as authority for this instruction upon Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610. We have many times said that when the establishment of a question of fact depends upon oral testimony, the credibility of the witness or witnesses is for the jury alone, and it is their exclusive province to determine whether, from such testimony, the fact in dispute has been established: Grambs v. Lynch, 20 W. N. C. 376; Harlow v.

Borough of Homestead, 194 Pa. 57; Bartlett v. Roths-
child, 214 Pa. 421; Fry v. National Glass Co., 219 Pa.
514. There is nothing in the case before us to take it out
of the foregoing rule. What was said in Lonzer v. R. R.
Co. seems, and especially of late, to be misunderstood.
All that was there decided was that when testimony not
in itself improbable is not at variance with any proved or
admitted facts, or with ordinary experience, and comes
from a witness whose candor there is no apparent ground
for doubting, a jury will not be permitted to indulge in
a capricious disbelief of such testimony. By "candor"
the learned justice who wrote the opinion unquestion-
ably meant "credibility," and the credibility of a wit-
ness is always more or less affected by his interest in the
matter in controversy. In the present case a fair in-
ference to have been drawn by the jury was that the
cashier of the bank was very much interested in the re-
sult of the suit. After the note of the McKees had ma-
tured and they wished to renew it he insisted upon its
payment, unless they would secure it by collaterals or
indorsement. Hoffman, the appellant, was then sug-
gested to him as an indorser, and later on the note was
received by him bearing the appellant's indorsement,
which had been fraudulently procured from him by Mc-
Kee. The cashier of the bank, its most active officer,
had, after insisting upon payment of the old obligation,
succeeded in procuring a new one from the McKees, bear-
ing the indorsement of Hoffman, for the balance due on
the old one; and does it require a demonstration to show
that he may have been a witness deeply interested in the
result of the suit which was to determine whether his
bank should be paid by Hoffman or lose what the McKees
owed it? If he was interested, his credibility under none
of our cases could have been taken from the jury. Upon
his testimony alone the right of the bank to recover de-
pended; for the burden was upon it to show that it had
no notice of McKee's fraud upon Hoffman, and it did
not attempt to show this by any other witness.

We are not to be understood as intimating that any interest the witness may have had or felt in the result of the trial did actually affect his credibility. All that we decide is that, under the circumstances and under the rule as to oral testimony, his credibility was for the jury alone, with their attention directed to the fact that his testimony was uncontradicted and that they could not capriciously disregard it. If under such instructions they should have found that the witness had or felt such an interest in the suit as affected his credibility, and a verdict had been returned for the defendant, the finding would have meant only that the burden upon the bank had not been discharged by showing by credible testimony what, under the statute, it was called upon to show. If there had been such a finding, it was within the power and discretion of the court below to have set it aside and given the appellee another chance to satisfy a jury by Young's testimony that it had no knowledge of the fraud committed in connection with the indorsement upon which it relies for recovery; but it by no means follows from this that the court was justified, in the first instance, in usurping the province of the jury: Dinan v. Supreme Council of the Catholic Mutual Benefit Assn., 210 Pa. 456.

The only error committed on the trial of this case was the withdrawal of the material question of fact from the jury for the reason given by the trial judge, and the sixth assignment of error is sustained. There is nothing in any of the others requiring discussion.

The judgment is reversed with a venire facias de novo.