## WEST v. OAKEY.

No. 10333—Opinion Filed Nov. 29, 1921.

(Syllabus.)

**1. Appeal and Error—Questions of Fact—Verdict—Damages.**

Where in an action to recover damages the case is tried to a jury and submitted under proper instructions given by the court and there is any evidence reasonably tending to support the verdict, the judgment will not be set aside on appeal on the grounds of insufficiency of testimony.

**2. Breach of Marriage Promise—Exemplary Damages.**

In an action to recover damages for a breach of promise of marriage where the defendant has knowingly practiced fraud and deceit on the plaintiff by reason of his relations with another woman, which he has concealed from the plaintiff for more than two and one-half years and then refuses to marry the plaintiff and announces his intention to marry the other woman, it is not reversible error for the court in its instructions to define exemplary damages in view of the statute which provides: "The damages for the breach of a promise of marriage rests in the sound discretion of the jury."

**3. Same—Instructions.**

The instructions examined, and held, that no reversible error was committed by the court in giving the instructions complained of.

**4. Same—Verdict— Sufficiency of Evidence—Abrogation of Contract.**

Where the defendant pleads as a defense to plaintiff's action that the contract had been abrogated and rescinded by both of the parties at the time the action was commenced and the verdict is in favor of the plaintiff and there is any evidence on this question reasonably tending to support the verdict of the jury, it will not be disturbed by this court on appeal. The evidence on this question does reasonably tend to support the verdict.

**5. Same—Excessiveness of Verdict.**

Where a man has engaged himself to marry a woman who is approximately 30 years of age and has continued such engagement for a period of nearly three years and thus deprived her of the opportunity of making other acquaintances with a view of leading up to advantageous marriage relations, we cannot say that a verdict of $3,500 is excessive or that it was given under the apparent influence of passion and prejudice.

Error from District Court, Ottawa County; Preston S. Davis, Judge.

Action by Lulu A. Oakey against John H. West to recover damages for breach of promise of marriage. Judgment for plaintiff, and defendant appeals. Affirmed.

Vern E. Thompson, for plaintiff in error.

Charles B. Mitchell, Dennis H. Wilson, James W. Hawes, and Seymour Riddle, for defendant in error.

MILLER, J. This action was commenced in the district court of Ottawa county by Lulu A. Oakey, as plaintiff, against John H. West, as defendant, to recover damages for the breach of a promise of marriage. The case was tried to a jury, which resulted in a verdict in favor of the plaintiff for the sum of $3,500. The defendant filed a motion for a new trial, which was overruled; saved all necessary exceptions and perfected this appeal. He appears here as plaintiff in error, but for convenience the parties will be referred to as they appeared in the lower court.

The plaintiff, for her cause of action, alleged in her petition: That about November, 1914, the plaintiff, being an unmarried woman, entered into a contract with defendant, John H. West, he being an unmarried man, whereby they mutually engaged themselves to each other to enter into the holy bonds of matrimony. By mutual agreement the specific time when such marriage was to be consummated was thereafter to be agreed upon. The marriage was to take place as soon as defendant could settle some outstanding financial obligations against him and place himself in a more substantial financial condition. The discussion of these mutual promises was renewed from time to time when the plaintiff and defendant would be together. In December, 1916, the defendant agreed that the marriage should take place at an early date. He was then engaged in the lumber business at Commerce and was prospering. On July 19, 1917, the defendant refused to marry plaintiff and stated that he would not consummate the marriage contract; that he was engaged to another woman and intended to marry her.

The plaintiff further alleged that during all the time from and after November, 1914, until in January, 1917, defendant had frequently and regularly called upon the plaintiff at her home, which was in Vinita. That in November, 1914, after the defendant had promised and agreed to marry the plaintiff, he induced the plaintiff to have sexual intercourse with him at her said home. That in consenting to the sexual relation with the defendant, the plaintiff relied upon the promise made by the defendant that he would marry her, and she did believe that the defendant would fulfill said promise and marry said plaintiff. That by reason of all

of these facts and circumstances she was greatly humiliated and brought into public scandal among her neighbors, friends, and acquaintances; that she has suffered great pain and anguish of mind and body and thereby has been damaged in the sum of $10,000.

To this petition the defendant answered by denying generally and specifically all of the allegations contained in said petition.

Plaintiff in error, West, in his petition in error, sets out 11 specific assignments of error. In his brief he says:

"For convenience we desire to discuss the assignments of error under four distinct heads:

"1st. Insufficiency of testimony to show contract of marriage.

"2nd. Entire want of testimony to justify the giving of an instruction on exemplary damages.

"3rd. If there ever was an agreement to marry existing between the parties to this suit, it was abrogated and rescinded by both parties prior to the commencement of this action and there was no existing contract at the time this action was commenced.

"4th. Excessiveness of damages awarded in this case under the apparent influence of passion and prejudice."

We will consider the above assignments of error in the order in which they are set out.

First.—"Insufficiency of testimony to show contract of marriage." The plaintiff testified she was 34 years old, then stated the time and conversation when the engagement took place as follows:

"A. That was sometime in November, 1914; I don't think I remember the particular day of the month; we were at my home, sitting on a settee, and Mr. West said to me, 'Well, Lulu, I have made a good many trips over here to see you; I now love you better than anything else in the world and I want you to marry me.' Q. What reply, if any, did you make to him? A. I said, 'Jack, do you really mean that?' He said 'Yes' I do,' and he was holding my hand at the time, and he lifted it up, and he said, 'I hope our hearts and lives will always be united as our hands are now.' Q. What was said at that time, if anything, in regard to when you should be married? A. Not very much right at that time. Q. Did Mr. West ever talk to you on any subsequent occasion about your being married? A. He did; every time he came to see me we talked about it. He said he had some debts he wished to straighten out and he wanted to get settled in busi-

ness as soon as possible and we would then be married. Q. Did that arrangement suit you? A. It was. I understood the conditions and I was happy in having Mr. West come to see me and believing I was going to be his wife, and so I was content. Q. So the arrangement between you and Mr. West, at that time, was that your marriage should take place as soon as Mr. West had arranged some financial matter? A. That was our agreement. Q. Did Mr. West tell you anything about his plans for future business? A. He told me he was going into business for himself. Q. Did he do that, if you know? A. He did. Q. What kind of business did he go into, and where? A. He engaged in the lumber business, in Commerce, Oklahoma, in September, 1916."

Mrs. Eva Vaught testified that she was 21 years old, a sister of plaintiff, Lulu Oakey; that at the time of the trial she had been married less than two weeks, having been married July 3, 1918; that defendant West had frequently told her he was going to marry her sister, Lulu Oakey. She was then asked the following questions and gave the following answers:

"Q. Now state, if you can, about how many different times you have heard Mr. West refer to his impending marriage with your sister. A. I remember of three or four times. Q. What was said by him? A. Well, one time he told me that he loved my sister and he intended to marry her, and he said he was going to call me little sister and from now on I was to be his little sister, and that I would be— he was sure I would like him best—he would be my favorite brother-in-law, and he wanted me to live with him and my sister when they were married."

This testimony was sufficient to make out a prima facie case that defendant had promised to marry the plaintiff. Defendant West introduced some letters written by the plaintiff in which she said four or five other men liked her and she could marry one of them if she wanted to. These letters were written in May, June, and July of 1917, just before defendant announced to the plaintiff that he would not marry her. She explained these letters by saying he had ceased to be as attentive and had not been writing her as frequently as before, and she was just bluffing. The plaintiff in one of these letters told the defendant how a man named Allen had broken off his engagement with her sister, Eva. She then says: "I know had you ever engaged yourself to me you would not have turned me down as he has Eva. I know when you make me a promise I could always depend on same." The defendant insisted this is an admission on the

part of the plaintiff that he had never promised to marry her. We think when it is read in the light of the subject under discussion she was merely stating a hypothetical proposition. The jury evidently viewed it in this light.

The defendant testified he was 35 years old, then denied he had ever asked the plaintiff to marry him or agreed to marry her.

Mr. Veetetoe testified to being present at plaintiff's home in January, 1918, in company with the defendant when they were discussing this action, it having already been filed and pending in the district court of Ottawa county. In telling about what transpired at this interview, he testified in part as follows:

"* * * And finally the lady said to him, says 'Mr. West, you know you promised to marry me,' or something of that kind, and Mr. West said, 'You are a liar,' with an oath about it, and the lady didn't resent it—Mr. Hawes: I object to that. The Court: Just state what was said. (Continuing) He says 'You are a damn liar if you say I promised to marry you, and I looked for the lady to hang a chair over his head. Q. Did she say anything in reply to that? A. No, she sat quiet there is what puzzled me. * * *"

It was not necessary for the plaintiff to so far forget herself as to hang a chair over the head of the defendant in order to make it appear that she was not acquiescing in his ungentlemanly remarks. Neither was it necessary for her again to assert that he had promised to marry her. The evidence was conflicting and it was the province of the jury to weigh the evidence and judge of the credibility of the witnesses. Its verdict was in favor of the plaintiff, and there being evidence reasonably tending to sustain the verdict, it will not be disturbed on appeal. St. L. & S. F. Ry. Co. v. Donahoo et al., 82 Okla. 44, 198 Pac. 81; Pool et al. v. Burger Bros., 56 Okla. 268, 155 Pac. 1144; Oaks v. Samples, 57 Okla. 660, 157 Pac. 739; Futoransky v. Pope, 57 Okla. 755, 157 Pac. 905, L. R. A. 1916F, 548.

Second.—"Entire want of testimony to justify the giving of an instruction on exemplary damages." In instruction No. 5 the court said: If you find from the evidence that the defendant is liable, it will be your duty to consider the question of damages. It then defined nominal, compensatory, and exemplary, or punitive damages. While it was not necessary for the

court to instruct on or even define exemplary damages in this case, we think it was harmless error, under the provisions of section 6005, Revised Laws of Oklahoma, 1910, which reads:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

The law pertaining to damages for the breach of a promise of marriage is defined in section 2871, Revised Laws of Oklahoma, 1910, which reads:

"The damages for the breach of promise of marriage rests in the sound discretion of the jury."

The defendant in his testimony admitted that he first became acquainted with the plaintiff in the spring of 1914. That he called on her, took her to shows and other places. That during the greater part of this time he was a traveling salesman for a sash and door company. That for eight or nine years he had been living with another woman and usually spent his Saturday nights and Sundays with her. He testified that he had never told the plaintiff about his relations with the other woman until June or July of 1917. On the 19th day of July, he told the plaintiff he intended to marry the other woman. He also concealed from the plaintiff that he was spending his Saturday nights and Sundays with the other woman.

Under the admissions of the defendant just set out, the jury returned a verdict for only $3,500. Said section 2871, supra, leaves the question of damages in the sound discretion of the jury. In view of all these facts, and after an examination of the entire record, we cannot say it appears that the error complained of has probably resulted in a miscarriage of justice.

We have examined the other instructions given by the court of which defendant West complains, and do not find that any reversible error was committed in the giving of the instructions.

Third.—"If there ever was an agreement to marry existing between the par-

ties to this suit, it was abrogated and rescinded by both parties prior to the commencement of this action, and there was no existing contract at the time this action was commenced." Defendant West claims under this head that the plaintiff wrote him a letter on May 30, 1917, and released him from the contract of marriage because the letter contained this quotation:

"Still making regular visits I suppose, seems to me you would cut out that time and trouble and just bring her over and settle in your new brick house and end things up right after such a long courtship, don't you think this the proper thing to do in such a long courtship?"

This is just a few lines West has culled from the entire letter, which is a very long one and which clearly shows that she had no intention of giving him up; that she was very much in love with him and desired to marry him. This letter was written shortly after she found out she had a rival. West did not testify that he understood from this letter that he was released, and that he thereafter and pursuant to this release of his engagement with the plaintiff became engaged to the other woman. He studiously avoided testifying as to when he became engaged to the other woman, but counsel for West say in their brief that he appears to have acted upon her suggestion, because he wrote a letter to her dated June 22, 1917, from which they cull the following statement:

"Well, I guess I am engaged, your previous letter sort of woke me up, that poor girl might not ever have a chance to get a man, so I guess I had better do the right thing by her, etc."

If defendant West wanted to rely upon the statement above quoted from plaintiff's letter of May 30, 1917, as releasing him from his engagement with the plaintiff, it was incumbent upon him to show that he became engaged to the other woman subsequent to the time of receiving her letter releasing him. For aught that appears in the statement quoted from West's letter he may have been engaged to the other woman for several years past. The jury had these letters before them in their entirety and found against the contentions of the defendant.

Fourth.—"Excessiveness of damages awarded in this case under the apparent influence of passion and prejudice." We have carefully examined the entire record and all of the evidence introduced on the trial of the case. It shows a duplicity of character in defendant West. He showed a wanton disregard of the rights, interests, or affections of the plaintiff. He appears to have considered only his own selfish desires and purposes. He debauched her to accomplish his own carnal desires, not caring what became of her when he was through with her. If she became an outcast, it was no concern of his. This record shows conclusively that she was a chaste woman prior to November, 1914. He trifled with her affections, insisted that she should not keep company with other men, and thereby deprived her of the opportunity of forming acquaintances and associations which might have lead to a happy marriage, the value of which could not be estimated in dollars and cents. She had more than 35 years yet to live in order to fulfill the allotted time of man. Taking all of these things into consideration and applying the law to the facts, which is that the damages for the breach of a promise of marriage rest in the sound discretion of the jury, we cannot say that the damages are excessive.

Finding no reversible error in the record, the judgment of the trial court is hereby affirmed.

HARRISON, C. J., and KANE, JOHNSON, ELTING, and KENNAMER, JJ., concur.