### MESSMAN v. WILT et ux.

No. 11598—Opinion Filed June 12, 1923.

Rehearing Denied July 17, 1923.

**1. Bills and Notes—Bona Fide Holder—Defensive Evidence.**

Under section 7729, Compiled Statutes 1921, which provides: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who becomes bound on the instrument prior to the acquisition of such defective title," when it is alleged that a party took note in due course for value without notice of any infirmity of the title of the person negotiating it, all evidence tending to contradict such allegations is competent in the trial of this issue.

**2. Trial—Directing Verdict.**

The court may direct a verdict for plaintiff or defendant, as the one or the other may be proper, only where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it.

**3. Same—Action on Note by Alleged Bona Fide Holder—Refusal to Direct Verdict.**

Even though the defendant offers no evidence on rebuttal to disclose that the plaintiff was not a bona fide holder of the note in due course, but where defendant has denied said fact, and the evidence introduced on the part of the plaintiff to prove such fact was of such nature that men of ordinary intelligence might draw different conclusions therefrom, it is not error for the court to refuse to instruct a verdict for the plaintiff. Record examined, and held, the court did not err in refusing to direct a verdict for the plaintiff.

**4. Bills and Notes—Negotiation—Statute.**

Under section 7700, Compiled Statutes 1921: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery."

**5. Same—Indorsement—Necessity.**

Section 7719, Comp. Stats. 1921, is as follows: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquired, in addition, the right to have the indorsement of the transferrer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." Where a negotiable note is payable to the order of a specified person, the indorsement of such person is necessary to the further negotiation of the instrument.

**6. Same—Holder in Due Course—Requisites.**

A holder in due course must come within all the requirements of section 7722, Comp. Stats. 1921.

**7. Same—"Defective Title."**

Section 7725, Comp. Stats. 1921, is: "The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud."

**8. Same—"Notice of Defects"—Bad Faith.**

Section 7726, Comp. Stats. 1921, is: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Held, that plaintiff in the instant case had knowledge of such facts that his action in taking the note sued upon amounted to bad faith on his part.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Woods County; Arthur G. Sutton, Judge.

Action by L. F. Messman against James A. Wilt and Lucinda K. Wilt on note and mortgage. Judgment for defendants, and plaintiff brings error. Affirmed.

H. Z. Wedgwood, for plaintiff in error.

E. W. Snoddy, for defendants in error.

Opinion by THOMPSON, C. This action was commenced on the 20th day of June, 1918, by L. F. Messman, plaintiff in error, filing his petition against James A. Wilt and Lucinda K. Wilt, defendants in error, in the district court of Woods county, Okla. The parties will be referred to in this opinion as plaintiff and defendant, just as they appeared in the lower court.

The petition alleges that on or about the 4th day of April, 1917, the defendants made, signed, and delivered to one J. A. Parker, or order, their promissory note for the sum of $2,050, for value received, payable five years after date at the Garfield County Bank, at Enid, Okla., with interest at the rate of ten per cent. per annum from date, payable semiannually, and providing for an attorney fee of $200, if placed in the hands of an attorney for collection; that before maturity of said note, and in due course, the same was indorsed, sold, and delivered to plaintiff, who is now the owner and holder thereof; that no part of the same had been paid, and asks for judgment for the principal and interest and attorney fees; that on the same day and date, and as part of the same transaction, the defendants executed and delivered as security for the payment of said note a real estate mortgage on the S. W. ¼ of section 20, township 25, range 14 west, and the S. W. ¼ of section 19, township 25, range 13 west, containing 320 acres, and alleged that there had been a breach of the conditions of the mortgage by failure to pay interest, and to pay taxes, and asked that said mortgage be foreclosed, and the land sold to satisfy the indebtedness. A copy of the note is embodied in the petition, and copy of the mortgage attached as an exhibit.

On the 8th day of August, 1918, defendants' time to plead was extended by the court until the 10th day of September, 1918, and on the 9th day of September, 1918, defendants filed a general demurrer and thereafter filed two other demurrers to plaintiff's

petition, and on September 16, 1919, defendants filed their verified answer, denying the allegations of plaintiff's petition, except such as were specifically admitted; admitting that they were the owners of the real estate described, especially denying that the plaintiff was the owner and holder of the pretended mortgage and note sued upon; alleging that said note and mortgage were fraudulent and void; that their signatures were procured to some instrument, or instruments, by fraud, and by procurement of one O. W. York; that they were "farmer people and ignorant of the wiles of those who prey upon the credulity of the credulous;" that O. W. York, in pursuance of the plans to defraud the defendants, persuaded them to give him an oil and gas lease on the S. W. ¼ of section 19, township 25 north, range 13 west; that O. W. York told them that a man in a big car from Alva, Okla.. wanted to buy the land, and would be after it soon and would pay $3.500 for it; that O W. York would hold all the papers until this man made the purchase of the oil and gas lease. and would then return the papers to the defendants, and they would be paid the sum of $1,450, and York would retain the balance; that they never saw or heard of J. A. Parker, whose name appears in the note and mortgage, until the filing of this action against them; that they received no consideration for the signing of the purported note and mortgage; that they were not able to read and understand the nature of the papers presented to them for signing, but that they relied entirely upon the statements and representations of O. W. York; that O. W. York informed them at the time they signed the mortgage that it only included the quarter-section of land on which they had given him the oil and gas lease; that no one ever came to purchase the lease, and they never received any sum whatever for the execution of the papers; that they never signed the papers, copies of which are attached to plaintiff's petition, marked exhibit "A", and being the mortgage on the 320 acres of land; that they did not execute the note set out in plaintiff's petition and deliver the same to the pretended· payee therein. nor to anyone for him; and by way of cross-petition they asked for damages in the sum of $300, and for cancellation of the mortgage of record, and that their title be quieted, and the plaintiff be adjudged to have no claim upon, interest in, or lien upon the real estate, or any part thereof, and for all other equitable relief, and for their costs.

To the answer plaintiff filed his reply, and later filed an amended reply, alleging

general denial; that the note was sold and indorsed to him before it was overdue, and that he took it in good faith in the regular course of business. and for value, and that at the time he had no notice of any infirmity of the instrument or defect in the title of the person negotiating it; that defendants could read and understand the instruments, signed and acknowledged the same before a notary public, and if they signed and delivered the note and mortgage without reading and understanding them, upon the representations of O. W. York, they were guilty of such negligence as would render them liable to plaintiff upon the note and mortgage sued upon. Upon the issues thus joined, the cause proceeded to trial in its regular course before a jury.

In the statement of the case to the jury, attorney for plaintiff stated that he would produce evidence to show that plaintiff bought this note "before maturity for valuable consideration, in good faith and in due course of business, without any knowledge then or any defense that might be imposed against it by the defendants," and he further stated. in the opening statement. that he would produce "evidence to show the bona fide transfer or purchase of the note by our client."

The evidence material to the cause, as produced by the plaintiff, was first, by the notary public, who took the acknowledgment, stating that at the instance of O. W. York he went to the home of defendants and took the acknowledgment to the mortgage on the 4th day of April, 1917; that the note and mortgage were signed in his presence by the defendants; that he took them back to his office, attached the seal, and turned them over to Mr. York; that York took him to the home of defendants in his car; that he did not know, not having made a close examination of the note and mortgage, whether the same were in the condition at the time of the trial that they were at the time they were signed by the defendants, and he could not say whether the name O. W. York had been erased and J. A. Parker's substituted; that the name appeared to have been written with a different and heavier ribbon than the rest of the note, and it appeared that the capitals "O. W." had been erased.

The testimony of witness Miller is that he drew the note and mortgage at the instance and request of York; that he put the name O. W. York in the note first and then changed it to J. A. Parker before he took it out of the typewriter, and wrote it with the same typewriter and same ribbon, and that he took the mortgage, after he had drawn

one note, and turned them over unsigned to O. W. York, and that Mr. Wilt, one of the defendants, and O. W. York were together at the time the papers were drawn up; that he did not know J. A. Parker and did not know where he lived; that Parker was not present; and undertook to explain the heavier type by saying that it could have been done by writing it over twice, but refused to testify that he did write it over twice; and that O. W. York was in the court room in attendance on the court at the time of the trial.

The note was introduced in evidence, a photographic copy of which was attached to the case-made, which, upon examination, shows that there was an erasure of the name of the payee, and the name of J A. Parker written therein in heavy type, which, when compared with the other typewritten words in the note, shows on its face to have been written either upon another typewriter or with a different ribbon, or both, and with the indorsement "without recourse in any way on me, J. A. Parker, by J. G. Parker, Jr." And the real estate mortgage was introduced, which is in regular form, covering the 320 acres mentioned in the petition in favor of J. A. Parker, signed by defendants and acknowledged on Oklahoma form.

Plaintiff, Messman, testified that he was engaged in the real estate and loan business, buying and selling notes and mortgages; that neither the principal nor the interest on the note had been paid; that he had demanded payment and that he was the owner of the note and mortgage, which he purchased on the 19th day of April, 1917, and paid $100 in cash and gave his check for $1,550 and introduced the check in favor of O. W. York, which was marked paid April 17, 1918, on the indorsement of C. W. York; that he bought the note from Mr. York, and that Mr. Parker, a brother of the payee of the note, had told him that it belonged to O. W. York; that he never saw J. A. Parker and never consulted him about it, and that J. A. Parker was in Harper, Kan.; that he had gone to the defendant's home with Mr. Sanley, with whom he had placed the note and mortgage; that Mr. Sanley held the note as collateral; that he had never indorsed it to Mr. Sanley.

Nowhere in the testimony does it show that J. G. Parker, Jr., was the agent of J. A. Parker, the payee, or that he had any authority to indorse the name of J. A. Parker upon said note.

The testimony of the defendants, that is material, as sworn to by James A. Wilt and Lucinda K. Wilt, is that O. W. York came to their home on the 4th day of April, 1917, and represented to them that he had a purchaser for an oil and gas mining lease upon some of the land described in plaintiff's petition, belonging to the defendants, who would pay the sum of $3,500, and if they would give him a note for $2,050 and a mortgage on one quarter-section of the land described in the petition, that he would hold the note and mortgage and take the $2,050 out of the $3,500 and pay to the defendants the balance, or $1,450, and return their note and mortgage; that the interest they were to receive from York was a one-half interest in the lease, which was designated in the testimony as being upon the west place, and that the mortgage was to be given on the west place only; that the note was executed to O. W. York; that they did not know J. A. Parker, and never saw him, and never heard of him, and that after the execution of the note and mortgage they learned for the first time when this action was commenced that the name of O. W. York had been erased as payee from the note and J. A. Parker written therein, and that there had been put in the mortgage another quarter-section of land more than was in the mortgage when executed, and that the quarter-section that had been added without their knowledge and consent embraced their home place, and that York never did assign or deliver to them the one-half interest in the lease, and that no consideration of any kind or character was ever given to them for said note and mortgage, and that York put the mortgage of record, and that O. W. York was present in the court room when the case was being tried. The defendants introduced letters from Sanley, who, plaintiff claimed, held the note as collateral, both before and after the commencement of this action, demanding payment of the note and claiming to be the owner thereof; and that Sanley and Messman both together had come to their home, and both stated that the note belonged to Sanley after the commencement of this action.

At the conclusion of all the testimony in the case, the plaintiff moved that the court direct a verdict for the plaintiff, as follows:

"By Mr. Glasser: Comes now the plaintiff and moves the court to direct a verdict for the plaintiff in this action for the reason that the defendant has wholly failed to prove any notice upon the part of said plaintiff of any defense which the defendant might have had to this paper prior to the purchase of the same by the plaintiff and that if the defendants have any defense against said paper they are not entitled to

maintain it against this plaintiff and have offered no evidence whatever that the said plaintiff, L. F. Messman, is not the owner and holder thereof in good faith and for a valuable consideration."

Which motion was overruled and exception taken thereto. And the court instructed the jury, and no exception was taken by either party to the instructions given by the court to the jury, and special findings of fact were requested and the jury returned into court its special findings of fact, which are as follows:

"In the District Court of Woods County, State of Oklahoma.

"L. F. Messman, Plaintiff.

"vs.                                No. 3865.

"James A. Wilt et al., Defendants.

"State whether or not you believe from the evidence, facts and circumstances in this case that the mortgage sued on herein was altered after the execution and delivery thereof, by inserting therein the description of another quarter section of land than was described therein when the same was executed.

"Answer: Yes.

Martin King,
"Foreman."

"State whether or not the mortgage was altered after it was executed by the defendants by changing the name from O. W. York to J. A. Parker.

"Answer: No.

"Martin King,
"Foreman."

And returned a general verdict in favor of the defendants. Motion for new trial was filed, overruled by the court and exceptions taken, and judgment entered in favor of the defendants upon the special findings of fact, and the verdict of the jury that plaintiff take nothing and defendants go hence without day, and that they recover their costs herein expended, from which judgment of the court plaintiff comes to this court regularly on appeal from said judgment.

Plaintiff sets up four assignments of error as follows:

"(1) The court erred in admitting incompetent, irrelevant and immaterial evidence on behalf of the defendants, which was prejudicial to the plaintiff.

"(2) The court erred in refusing to direct a verdict for the plaintiff.

"(3) The court erred in overruling the plaintiff's motion for a new trial.

"(4) That the verdict is not sustained by sufficient evidence and is contrary to law."

The attorney for plaintiff, in his brief, complains that all evidence, both oral and documentary, admitted by the trial court and objected to by him, on the question of fraud at the time the note was negotiated, and as to the question of whether the plaintiff or Sanley was the owner of the note at the time the suit was brought, should have been excluded from the jury, and that it was reversible error for the court to have admitted this testimony and permitted it to go to the jury. In order to arrive at a correct decision upon this contention of plaintiff, it will be necessary to refer to the pleadings in the case to show what were the exact issues upon which the case was tried. We find in the plaintiff's petition this allegation:

"That before maturity of said note and in due course the same was indorsed, so d and delivered to plaintiff, who is now the owner and holder thereof."

The defendants in their answer say:

"They deny each and every material allegation in said amended petition contained except such allegations as are herein specifically admitted."

And they further allege such acts on the part of O. W. York in the negotiation of the note and mortgage, and the procurement of their signatures, that would amount to fraud and defeat the title of O. W. York, whom they claim to have been the original payee in the note, in that no consideration passed for the execution of the note and mortgage; that he would transfer to them a one-half interest in an oil and gas lease, which he had contracted to sell to a man that drove a big car, for the sum of $3,500, and that he would take out the principal of the note and pay to the defendants a balance of $1,450, and that he would hold all the papers until the purchaser should take over the oil and gas lease, and then return them to the defendants; that they did not know J. A. Parker, whose name was afterwards put in the note as payee without their knowledge or consent, and that an additional quarter section of land had been put in the mortgage after the same was signed and delivered to York; that they never signed the papers attached as exhibits to plaintiff's petition, and that they did not execute the note set out in plaintiff's petition and deliver the same to the pretended payee therein nor to anyone for him. And the plaintiff, in his reply, entered a general denial and set up specifically that he took said note in

good faith and in due course for value; that he had no notice of any infirmity of the instrument, or defect in the title of the person negotiating it. And, in the opening statement of counsel for plaintiff, he stated he would prove these allegations. Then, there being a clear-cut issue upon this proposition, the plaintiff alleging that he is a holder in due course and for value without notice of any infirmity of the title in the person who negotiated the instrument, and the defendants denying these allegations, and setting up the facts as to the fraud practiced upon them by the person who negotiated the instrument, we think under the pleadings and under the statute law of this state, regulating the negotiation of negotiable instruments, this evidence was clearly admissible.

Section 7729, Comp. Stats. 1921, is as follows:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

And we cannot conceive how it would be possible for defendants to show the defective title in O. W. York or as to whether the plaintiff was the true holder of the note in due course in good faith other than by the evidence introduced by them and admitted by the court in this case under the pleadings. Every fact and every circumstance connected with the negotiation of the note by York, and the subsequent acts of York and the plaintiff, himself, and his admissions as to whether Sanley was the owner of the note, and all the acts or statements of the parties, to which he assented, were proper facts to be presented to the court and jury upon the question of fraud in the inception of this transaction, and whatever facts or circumstances tended to show that the plaintiff did not obtain the note or was not the holder of the title to said note in due course, or did not have actual knowledge of the infirmity or defect in the title in the party negotiating the note or knowledge of such facts that his action in taking the instrument amounted to bad faith, were material under the issues joined in this case.

The plaintiff, in his brief, complains that there is no allegation in defendants' answer that the plaintiff had notice or knowledge of the fraud practiced upon the defendants or any averment of any facts or circumstances tending to show bad faith upon his part in purchasing the note, and hence, in the absence of such allegations on part of the defendants, that the testimony complained of was not admissible. We cannot agree with counsel upon this proposition, and we think that an examination of the pleadings, above referred to, raises that question upon the allegations of the petition and the denials and allegations of the answer, and certainly it is raised by the allegations of the plaintiff, himself in his amended reply and in his opening statement to the jury as to his proof. It is, therefore, our opinion that the testimony was competent to show the fraud in the procurement of the note, and upon the question whether the plaintiff acted in good or bad faith in obtaining possession of the note, or whether he was the holder of the note in due course.

The second assignment of error presented by plaintiff's brief is that the court did not instruct the jury for a verdict in his behalf. The evidence in this case shows conclusively that this whole transaction as between York, the negotiator of the note, and the defendants was, on the part of York, "conceived in sin and brought forth in iniquity." The defendants had confided in York, having had some dealings with him theretofore, and, from the evidence, they had very little knowledge of the details of business: he represented to them that he had an oil and gas lease upon a quarter section of land owned by them; that he had the same sold to a man from Alva, who drove a big car, whose name he did not disclose, for the sum of $3,500, and that if they would give him their note for $2,050, and a mortgage on a quarter section of land, he would transfer them a one-half interest in the lease and would hold the papers until the sale was effected and take out the $2,050 and return the papers to them and pay them the balance of $1,450. And the evidence is, by both the defendants, that when the note was signed by them the name O. W. York appeared therein as payee, and while it is true that a witness testified on part of the plaintiff that the name of O. W. York was erased by him and the name of J. A. Parker written therein before it was taken out of the typewriter and delivered to York and that James A. Wilt, one of the defendants, was present at the time the change was made, but upon a careful examination of the note, a photographic copy of which is attached to the case-made, it conclusively shows, as testified by one of the witnesses for the plaintiff, and

from the testimony of both defendants, that the name of J. A. Parker had been inserted after O. W. York's name had been erased, and with a typewriter bearing a different and heavier ribbon, if not upon a different typewriter than that used in filling out the remainder of the note, and the evidence further shows that the quarter section of land, upon which the home of these defendants is located, was added to the mortgage after it had been executed by the defendants and delivered to York; that J. A. Parker, whose name appeared in the note as payee when it was introduced in evidence, was not present at the time of the negotiation of the note; was not known to the defendants and did not seem to be known to anybody connected with the transaction, except the plaintiff, who stated that he, at the time of the trial, was up in Harper, Kansas, and as far as the record discloses never knew of the note and mortgage being in his name, and that O. W. York, who negotiated the note, was in the court room in attendance on the trial and never took the witness stand to give evidence in connection with the transaction, and the plaintiff, in his brief, nowhere contends that there was not fraud perpetrated upon the defendants by O. W. York, who negotiated the instrument, and that York himself acquired title thereto that would be recognized in the courts, and that the defendants did not have a good and valid defense against York, asserting title thereto in an action in court, but he relies entirely upon the claim on his part that he obtained title to the note for a valuable consideration in due course without notice of any defect in the title of the original party who negotiated the note, thereby conceding the contention of defendants that there was fraud in the procurement of the note, and that the title of the payee in the note was defective. The testimony further shows that the plaintiff went to the bank and consulted J. G. Parker, Jr., and never did see or talk to J. A. Parker, whose name appears as payee in the note; that he had no interest in the note, but learned that the note belonged to O. W. York; that he went to O. W. York and purchased the note under those circumstances with the note showing upon its face an erasure and the initials "O. W." not having been completely erased, showing the name J. A. Parker not to have been made by the same ribbon or typewriter, and that he paid O. W. York the consideration for the note and never paid J. A. Parker anything, and the note shows that it was never indorsed by J. A. Parker himself, but it is indorsed "without recourse in any way on

me, J. A. Parker by J. G. Parker, Jr.," and there is a total absence of any testimony that J. G. Parker, Jr., had any authority from J. A. Parker, either express or implied, to make said indorsement, and there is also a total absence of any testimony to show that J. A. Parker ever knew of the existence of the note and mortgage having been executed in this case in his name by the defendants. And the evidence further shows that a man by the name of Sanley was holding this note, claiming to be the owner thereof, wrote several letters to the defendants, the genuineness of which is admitted by plaintiff, demanding payment therefor, some of them even after this action was begun by this plaintiff, and the evidence further shows that the plaintiff and Sanley, after this suit was commenced, came to the home of defendants, claiming that Sanley was still the owner and holder of the note and demanding that they pay the note or the interest thereon. These questions raised by the evidence in this case are questions for the jury under proper instructions of the court.

In case of Kelly v. Hamilton, 78 Okla. 181, 189 Pac. 535, this court established the rule:

"Where the evidence is conflicting and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence only which is favorable to the party against whom the motion is leveled."

This court, in the case of Jones v. First State Bank of Bristow, 39 Okla. 784, 136 Pac. 737, further established the rule upon the question of a directed verdict:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.

"The court may direct a verdict for plaintiff or defendant, as the one or the other may be proper, only where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it."

Also to like effect is the case of Chestnutt-Gibbons Grocer Co. v. Consumers' Fruit Co., 44 Okla. 318, 144 Pac. 591.

In the case of Jenkins v. Helms et al., 89 Okla. 77, 213 Pac. 322 (decided July 25, 1922, rehearing denied March 7, 1923), it was held in a well considered opinion:

"Even though the defendant offers no evidence on rebuttal to disclose that the plaintiff was not a bona fide holder of the note in due course, but where defendant has denied said fact, and the evidence introduced on the part of the plaintiff to prove such fact was of such nature that men of ordinary intelligence might draw different conclusions therefrom, it is not error for the court to refuse to instruct a verdict for the plaintiff.

"Record examined, and held, the court did not err in refusing to direct a verdict for the plaintiff."

In the case of Besse v. Morgan, 84 Okla. 203, 202 Pac. 1012, this court ruled on this proposition to like effect.

And in the case of Ranchmen's Trust Co. v. Gill (Kan.) 214 Pac. 413 the Supreme Court of Kansas, on the 7th day of April, 1923, decided:

"Whether the holder of a negotiable promissory note, the execution of which was induced by fraudulent representations, became the holder thereof under such circumstances as to be a holder in due course is ordinarily a jury question."

And, in the body of the above opinion on page 417, the court says:

"From its nature this is essentially a jury question. Beachy v. Jones, 168 Kan. 236, 195 Pac. 184; Phillips v. Eldridge, 221 Mass. 103, 108 N. E. 909; Second National Bank v. Hoffman. 229 Pa. 420, 78 Atl. 1002; Id., 233 Pa. 390, 82 Atl. 463; Arnd v. Ayesworth, 145 Iowa, 185, 123 N. W. 1000, 29 L. R. A. (N. S.) 638."

Upon the above authority we are of the opinion that the trial court, in the instant case, did not err in refusing to direct a verdict for the plaintiff.

The next two assignments of error urged by plaintiff upon the questions of the overruling of the plaintiff's motion for new trial, and that the verdict is not sustained by sufficient evidence and is contrary to the law, may be disposed of under one head. The law of this state on negotiable instruments (section 7700, Comp. Stats. 1921), upon the subject when the instrument is negotiated, provides:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery."

Then, under the above section it becomes important as to whether this note was negotiated by the indorsement of the holder completed by delivery. The undisputed evidence in this case is that the payee, J. A. Parker, whose name was substituted in the note, had nothing to do with negotiating it; had nothing to do with procuring the note from the defendant and, so far as the evidence discloses, had no knowledge of the making of the note to him; that it was never delivered to him, but was found by plaintiff in the Garfield County Bank, at Enid; that it was never indorsed by him personally, and that he had no knowledge of said indorsement, but that it was indorsed by J. G. Parker, Jr., without recourse in any way on him, and it nowhere appears that J. G. Parker, Jr., had any authority to make said indorsement as the agent of J. A. Parker, or in any other way, and that his name was substituted as payee in the note, as testified to by both defendants, and as it reasonably appears, upon examination of the note, after the same had been executed and delivered to O. W. York by the defendants. Then the court and jury, upon the issues in this case and under this proof, had a right to determine that the note had not been properly negotiated by the indorsement of the payee in the note or by the indorsement of O. W. York, who, under all the testimony in the case, was the owner and holder of the note.

Comp. Stats. 1921, sec. 7719, is as follows:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferrer. But, for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

Then, under this provision of the statute the indorsement not having been made by either the payee of the note, J. A. Parker, or by the owner, O. W. York, the plaintiff, Messman, holder of the note as transferee, had only such title as the transferrer had therein the note is subject to all legal and equitable defenses that the defendants had as against the original owner and holder of such unindorsed note.

In the case of Gault v. Kane, 44 Okla. 763, 145 Pac. 1128, this court held:

"A note payable to order can be transferred free from all equities between the original parties to it only by indorsement, and a transferee of such note must both allege and prove that the note was transferred by indorsement, if he desires to avoid such equities as may be set up against him."

In the case of Stevens v. Pierce, 79 Okla. 290, 193 Pac. 417, cited by attorney for plaintiff in his brief, we find that this court has decided this phase of the case as follows:

"Where a negotiable note is payable to the order of a specified person, the indorsement of such person is necessary to the further negotiation of the instrument, and when the same is indorsed in blank, not specifying any indorsee, it is thereafter payable to bearer and may be negotiated by delivery."

The undisputed testimony in this case shows the existence of such infirmities in the note sued upon as to render it unenforceable as between the original parties, and the burden is upon the holder to prove that he acquired title in due course. The provisions of our statute, section 7722, Comp. Stats. 1921, provides who is a holder in due course:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face;

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third. That he took it in good faith and for value;

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Under this provision of the statute, applied to the instant case, the plaintiff in this case knew and was informed that there had been a change and an erasure in the name of the payee, as shown upon the face of the note; that the payee, whose name appeared in the note, did not own the note, was not the holder thereof, and had no interest in the same, and that O. W. York was the owner, holder and the only interested party in the note; that J. A. Parker's name, which appeared in the note as payee, had been inserted therein over an erasure by a different and darker ribbon, or upon a dif-

ferent typewriter, or both, than the one used in filling out the other portion of the note; and that J. A. Parker, whose name appeared in the note as payee, did not indorse the same to him or have anything to do with the transfer thereof to him, but that the same was indorsed by J. G. Parker, Jr., without any authority from the payee, and that he did not require the owner and holder, O. W. York, to indorse the note, but took the note and paid the entire purchase price to O. W. York without ever having any understanding with J. A. Parker, the payee, whose name had been substituted in the note, and, under these undisputed facts, we are of the opinion that he was not a holder of the note in due course for the reason that the note was not regular upon its face, and that he did not take it in good faith, and that he did have notice of an infirmity in the instrument, and defect of the title in the person negotiating it.

Section 7725, Comp. Stats. 1921, defines when a title is defective as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiated it in breach of faith, or under such circumstances as amount to fraud."

In view of the facts heretofore referred to, and in view of the fact that O. W. York, who negotiated the execution of this note and mortgage, was in the court room and failed to testify and deny the claims of defendants, that the note and mortgage had been tampered with, and that an additional quarter section of land had been included in the mortgage without the knowledge and consent of the defendants, and in view of the fact that the plaintiff, in his brief, nowhere claims that the title of York and Parker was not deceptive, and had not been procured by fraud and unlawful means, and for an illegal consideration, we are forced to conclude that the title to this note and mortgage, under the statute, was defective.

Section 7726, Comp. Stats. 1921, defines what constitutes notice of infirmity as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual

knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

And under the facts in this case we are forced to conclude that plaintiff, Messman, had knowledge of such facts and circumstances that his action in taking the instrument amounted to bad faith on his part.

The jury in this case found in its special finding of fact that the mortgage sued on was altered after the execution and delivery thereof, by inserting therein the description of another quarter section of land than was described therein, when the same was executed and also returned a general verdict in favor of the defendants.

The undisputed testimony in this case shows the existence of such infirmities in the notes sued upon as to render it unenforceable as between the original parties, and under section 7729, Comp. Stats. 1921, above quoted, the burden is upon the holder to prove that he acquires title in due course and this principle is upheld in the case of Union State Bank v. Mayor, 88 Okla. 230, 213 Pac. 987; also in the case of Lambert v. Smith, 53 Okla. 606, 157 Pac. 909, which case seems to be a leading case on the subject, and this seers to be in accord with the almost uniform view on this question with all the states which have adopted the Negotiable Instrument Act. See notes on pages 25, 26, 27, 28, and 29, vol. 18, A. L. R. This being true, the jury having returned a special finding of fraud in the procurement of the mortgage in this case and their general verdict in favor of the defendants, and there being ample evidence to fully sustain this verdict, this court will not disturb the verdict of the jury in this case on appeal. tThis has been the uniform holding of this court in all cases. West v. Oakey, 84 Okla. 59, 202 Pac. 318; Norris v. Hibler, 83 Okla. 197, 201 Pac. 495; Sand Springs Ry. Co. v. Smith, 84 Okla. 211, 203 Pac. 207; Harn v. Smith, 85 Okla. 137, 204 Pac. 642; Peoples National Bank of Kingfisher v. Rickords, 85 Okla. 9, 204 Pac. 130; Tulsa Entertainment Co. v. Greenlees, 85 Okla. 113, 205 Pac. 179; Okla., K. & M. Ry. Co. v. Hurst, 86 Okla. 177, 207 Pac. 86.

The court, however, upon the verdict of the jury simply adjudged that the plaintiff take nothing, and that the defendants go hence with their costs. In this, the court committed error, for after determining that plaintiff was not an innocent purchaser in due course, it was the duty of the trial court to settle the equities between the

parties, and to have canceled the note and mortgage, as prayed for by the defendants.

The judgment of the court in finding that the plaintiff was not an innocent purchaser in due course is affirmed, and the cause remanded with direction to the trial court to cancel the mortgage of record and quiet the title of the defendants to the lands involved in this controversy.

By the Court: It is so ordered.